# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                            **Plaintiff,**

v.

JOSEPH R. ISAAC (01),

                            **Defendants.**

Case No. 23-20050-01-DDC

## <u>MEMORANDUM AND ORDER</u>

The government has charged defendant, Joseph R. Isaac, with possessing an illegal machine gun and illegally possessing a gun as a felon. The government has filed a Fed. R. Evid. 404(b) notice, asserting that it seeks to admit social-media posts of defendant possessing guns on other occasions. Doc. 76; Doc. 78. The government asks the court to rule, preliminarily and in advance of trial, that the government can admit the social-media posts under Rule 404(b) or, in the alternative, as evidence intrinsic to the offenses charged here. The court declines to do so, and it also denies the motion to rule this evidence admissible pretrial.

The government also has filed a notice that it intends to utilize an affidavit from a record custodian when admitting the social-media posts at trial because, in the government's view, the social-media evidence is self-authenticating. Doc. 77. Defendant has objected. Doc. 80. The court concludes that the social-media posts don't qualify as self-authenticating and sustains defendant's objection.

The court explains these decisions, below, beginning with the relevant background.

I.        **Background**[1]

In June 2022, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) had a team investigating defendant for illegal firearm possession.  The ATF team got a tip about defendant and, after investigating, found photos of him posing with a Glock-style gun that included a conversion device, making the gun fully automatic.  After the tip, ATF went to the social-media pages of defendant and others.  There, they found many photos and videos of defendant posing with guns.

On October 19, 2022, two agents encountered defendant's car driving down a street in Kansas City, Kansas.  The agents decided to follow.  Defendant drove to a townhome complex, where the agents started surveillance.  A third officer, Horine, joined the other agents.  Horine saw another person open the Jeep's door, grab what looked like an AK-style rifle, and climb into the passenger seat.  Defendant then drove to his house in Parkville and later returned to the townhome complex.  The agents continued their surveillance throughout these travels.

Back at the townhome complex, Horine, using binoculars, saw defendant walk toward the passenger side of the Jeep and spotted a black, Glock-style pistol with a magazine in defendant's hands.  Horine then saw defendant handle an AK-47-style pistol.  The ATF team knew that defendant was a convicted felon, so they decided to utilize a Kansas City, Kansas Police Department team to try to seize the firearm evidence.  When the police arrived, everyone in the townhome complex parking lot entered the townhome, including defendant.  Horine saw bulges in defendant's pockets that looked like—in the officer's judgment—a magazine and a gun.

But defendant didn't have any longer-profile guns with him when he entered the townhouse, so Horine concluded that the AK-47-style pistol was still inside the Jeep.  Police

---

[1]        Most of these facts come from the court's Order denying defendant's Motion to Suppress (Doc. 42), Doc. 65, which followed an evidentiary hearing.

officers looked in the Jeep and saw guns in the front passenger compartment, including at least two AR-style rifles.  One of the ATF officers determined that probable cause existed to search the Jeep without a warrant.  After giving defendant five minutes to consult with an attorney and decide whether to unlock the vehicle, the officers broke the Jeep's windows.  Officers recovered four guns from the Jeep:  two AK-47-style pistols called Micro Dracos, an AK-47-style rifle, and a .40 caliber Glock pistol.  Officers also saw a machine-gun-conversion device on the Glock.

The government indicted defendant on two counts:

1.  Knowingly possessing a machine gun on October 19, 2022, specifically, a Glock .40 caliber pistol, model 27, with serial number PEB668;[2] and

2.  Felon in possession of a firearm on October 19, 2022, specifically:

    a.  A Glock .40 caliber pistol, model 27, with serial number PEB668;

    b.  A Romarm/Cugir 7.62x39mm caliber pistol, model Micro Draco, with serial number ROA21PMD25919; and

    c.  A Romarm/Cugir 7.62x39mm caliber pistol, model Micro Draco, with serial number ROA22PG2374

Doc. 1 at 1–2.[3]

---

[2]    According to the government, the Glock .40 pistol had a machine-gun-conversion device, known as a "Glock switch"—a type of auto sear.  In an offhand comment in its brief, the government asserted that the Glock switch "alone constitutes a 'machine gun' under 18 U.S.C. § 922(o) and 26 U.S.C. § 5845(b)."  Doc. 76 at 9.  In light of this comment, the court must clarify that it has interpreted the Indictment to charge defendant with possessing the Glock .40 pistol, not just the Glock switch.  Indeed, when denying defendant's motion to dismiss the machine-gun charge, the court wrote, "The Indictment doesn't charge Mr. Isaac with a possession of an auto sear on its own.  It charges possession of a .40 caliber Glock pistol meeting the definition of a 'machine gun.'"  Doc. 65 at 29.  So, in the court's view, the government can't sustain its burden on the machine-gun charge by adducing evidence only of the Glock switch; it must adduce evidence of the Glock .40 and show that the Glock .40 was a machine gun.  The court thus concludes that the government's offhand statement was just that—a comment lacking any legal significance.

[3]    Though officers found four guns in defendant's Jeep, the Indictment only charged defendant with possessing three.  The government explains that officers saw the fourth gun, a Citizens Armory of Mexico 7.62x39mm rifle, with one of defendant's associates, so the government hasn't charged defendant with possessing this gun.  Doc. 76 at 9 n.4.

The government now seeks to introduce certain items of evidence either as Fed. R. Evid. 404(b) evidence or evidence intrinsic to the crimes charged here.  The government's motion describes the following evidence:

- 32 photos and videos from defendant's social media dated September 2020 to September 2022, described in narrative form by the government;

- a video posted by defendant's friend showing defendant firing guns at a range on September 7, 2022;

- social-media conversations about machine-gun-conversion devices between defendant and others.

Doc. 78 at 3–6.

The court held a hearing on the government's motion.  At the hearing, Horine testified about five photos.  Exhibit 1 was a photo taken by Horine of the Glock .40 pistol, after officers had recovered the pistol from defendant's Jeep.  Exhibit 2 was a social-media post of defendant standing in a convenience store, holding a gun.  Exhibit 3 was another social-media post, this time, a post showing a photograph of the gun shown in Exhibit 2 in defendant's hand.  Horine testified that the gun shown in Exhibits 2 and 3 was the same gun as the one recovered from defendant's Jeep on October 19, 2022.  Horine based his opinion on the gun's make, caliber, size, model, and slide stop wear pattern.  Exhibit 4 was another photo of the Glock .40, taken after officers had seized it from the vehicle.  Exhibit 5 was a still shot from an Instagram video, depicting defendant with a gun.  Horine testified that the gun in Exhibit 5 matches the gun recovered on October 19.  The government didn't connect any of these exhibits to the photos and videos described in their Rule 404(b) notice.

Next, the court evaluates the admissibility of the social-media photo and video evidence of defendant possessing guns.

## II.        Analysis

The court begins its analysis with the government's argument that this evidence is admissible as evidence intrinsic to the crimes charged.  Concluding that the evidence isn't intrinsic, the court then considers the government's alternative argument that the evidence is admissible under Rule 404(b).

### A.        Intrinsic Evidence

"Rule 404(b)'s prohibition 'only applies to evidence of acts extrinsic to the charged crime.'" *United States v. DeLeon*, No. 22-2036, 2025 WL 2793726, at *4 (10th Cir. Oct. 1, 2025) (emphasis omitted) (quoting *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011)).  So, "as a threshold matter, courts analyzing the admissibility of so-called other-act evidence must first determine whether the evidence is 'intrinsic' or 'extrinsic'" because intrinsic evidence lies outside the scope of Rule 404(b).  *Id.* (quoting *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015)).

Evidence is intrinsic when it's "directly connected to the factual circumstances of the crime and provides contextual or background information to the jury." *United States v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009) (quotation cleaned up).  Evidence is extrinsic when it "is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense." *Id.* (quotation cleaned up).  Our Circuit has provided some anchors for this issue, suggesting that evidence is intrinsic when it:

- was inextricably intertwined with the charged conduct,

- occurred within the same time frame as the activity in the conspiracy being charged,

- was a necessary preliminary to the charged conspiracy,

- provided direct proof of the defendant's involvement with the charged crimes,

- was entirely germane background information, directly connected to the factual circumstances of the crime, or

- was necessary to provide the jury with background and context of the nature of the defendant's relationship to his accomplice.

*Kupfer*, 797 F.3d at 1238 (quotation cleaned up).

The government asserts that it "is offering the pictures and videos as part of intrinsic evidence of the crimes charged" because they "are 'intimately connected or blended with the factual circumstances of the charged offense' and, therefore, are acts intrinsic to the charged offense." Doc. 76 at 15. Evidence of a prior act is inextricably intertwined with a charged crime when evidence about the charged crime "would have been confusing and incomplete without mention of the prior act." *United States v. Ford*, 613 F.3d 1263, 1267 (10th Cir. 2010) (quotation cleaned up). Put differently, this evidence is "part and parcel of the proof of the offense charged in the indictment." *Id.* (quotation cleaned up).

For example, in *Ford*, defendant escaped from prison and, as he jumped the fence, he grabbed a stolen gun that his girlfriend had stashed for him in advance. *Id.* at 1266. Defendant was apprehended and charged with felon in possession of a gun; fugitive in possession of a gun; and possession of stolen firearms. *Id.* at 1265–66. At trial, the court admitted—as intrinsic evidence—the girlfriend's testimony about stealing the firearm and stashing it for defendant's use in his escape. *Id.* at 1267–68. The Circuit affirmed this decision, concluding that the escape "could not be separated from the charged crimes" because defendant's "flight began with the escape, which explained his need for weapons and the circumstances of his arrest[.]" *Id.* at 1268.

As another example, in *United States v. Abe*, defendant had attacked the owner of an auto-repair shop, grabbed the owner's gun, and ran to a nearby insurance company. No. 22-

2089, 2024 WL 2796546, at *1 (10th Cir. May 23, 2024). At the insurance company, he pointed a gun at an employee and robbed the place of cash. *Id.* Based on the events at the insurance company, defendant was charged with Hobbs Act robbery, use of a weapon in a crime of violence, and possessing a stolen firearm. *Id.* At trial, the court admitted evidence of defendant attacking the auto-repair shop owner as evidence intrinsic to the insurance-company robbery. *Id.* at *10. The Circuit affirmed, concluding the district court didn't abuse its discretion because the evidence from the auto-repair shop showed how defendant had secured the gun that he used in the robbery. *Id.* at *11. So, the evidence was "directly connected" to possessing a stolen firearm because it showed that defendant himself had stolen the firearm, and thus knew it was stolen. *Id.* (quotation cleaned up). And the evidence provided contextual information because the auto-repair shop fight was a "necessary preliminary" to the Hobbs Act robbery and use of a weapon in a crime of violence charges. *Id.* (quotation cleaned up).

In contrast, here, the evidence of defendant's possession of guns during the two years leading up to October 2022 does not qualify as inextricably intertwined with defendant's possession of guns in October 2022. The government need only show that defendant possessed guns on that October day, so it doesn't need evidence of prior gun possession to avoid presenting "confusing" or "incomplete" evidence. *Ford*, 613 F.3d at 1267. Evidence of prior gun possession over the course of two years simply isn't "part and parcel" of possessing guns on a specific date. *Id.* (quotation cleaned up).

This case is different, in large part, because of the charges. In *Ford*, the charged crimes required the government to prove defendant was a fugitive and the gun was stolen. *Id.* at 1265–66. So, the testimony by the *Ford* defendant's girlfriend's about stealing the gun for her boyfriend to use as he escaped was part and parcel of the charged offenses. *Id.* at 1268. And in

*Abe*, the charged crimes required the government to prove robbery, use of a weapon during that robbery, and possession of a stolen firearm. 2024 WL 2796546, at *1. The evidence of the auto-repair shop attack showed how defendant had stolen the gun and explained where he acquired the gun he used to commit the robbery—classic part-and-parcel evidence. *See id.* at *11. In both instances, the government sought to complete the story about the gun.

That's simply not so here. The government has charged defendant with possession a machine gun and felon in possession on October 19, 2022. There's just no story to complete about the guns charged. Evidence of prior gun possession isn't directly connected to defendant allegedly possessing guns on a specific date. Nor is it a necessary preliminary. Indeed, the government doesn't cite a single case where our Circuit affirmed a district court admitting evidence about prior gun possession as intrinsic to a felon-in-possession charge. *See generally* Doc. 76.

At the hearing, the government insisted that its intrinsic argument is stronger for the machine-gun charge than it is for the felon-in-possession charge. The court's not convinced. Just as prior gun possession isn't intrinsic to later possession, prior possession of a machine-gun-conversion device isn't intrinsic to later possession of a machine-gun-conversion device. Perhaps earlier possession is *probative* of defendant's understanding that the object he allegedly possessed on a later date was a machine gun. But it's not *intrinsic*. Prior possession—at some unknown time before the charged possession—isn't part and parcel of the current charges, a necessary preliminary, direct proof, or directly connected to these factual circumstances. The evidence simply doesn't qualify as intrinsic.

Because this evidence isn't intrinsic, the court next must consider whether to admit the evidence under Rule 404(b).

### B.     Rule 404(b)

Rule 404(b) prevents the use of propensity evidence.  Rule 404(b)(1) provides: "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The rules permit other uses of this evidence, however.  Specifically, this "evidence may be admissible for another," non-propensity "purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  "[W]hen other-act evidence is admitted for a proper purpose and is relevant, it may be admissible even though it has the potential impermissible side effect of allowing the jury to infer criminal propensity." *United States v. Moran*, 503 F.3d 1135, 1145 (10th Cir. 2007) (quotation cleaned up).

To determine whether evidence is admissible under Rule 404(b), courts apply a four-factor test:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*United States v. Davis*, 636 F.3d 1281, 1297 (10th Cir. 2011) (quotation cleaned up).  At this pretrial stage, the court need not address the fourth factor just yet.

The government bears the burden to "articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts." *United States v. Kendall*, 766 F.2d 1426, 1436 (10th Cir. 1985).  And district courts must "identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom." *United States v. Youts*, 229 F.3d 1312, 1317 (10th Cir. 2000).  District courts have

wide discretion when deciding whether to admit evidence under Rule 404(b).  *Irving*, 665 F.3d at 1210.

Though not cited by the government, our Circuit has decided many cases about evidence of prior firearm possession as Rule 404(b) evidence in felon-in-possession prosecutions.  *See, e.g.*, *Moran*, 503 F.3d 1135; *United States v. McGlothin*, 705 F.3d 1254 (10th Cir. 2013); *United States v. Benford*, 875 F.3d 1007 (10th Cir. 2017).  The holdings in these cases all originate in *Moran*.  There, a property owner reported that defendant had trespassed on her land.  *Moran*, 503 F.3d at 1138.  Officers stopped defendant's car and, as they approached, "saw the butt of a rifle stock sticking out of an unzipped rifle case on the back seat."  *Id.* at 1139.  When asked about the gun, defendant replied that the rifle belonged to his girlfriend.  *Id.*  The government indicted defendant for felon in possession and, at trial, adduced Rule 404(b) evidence of defendant's earlier conviction 11 years before his arrest for felon in possession.  *Id.*  The Circuit affirmed the trial court's decision to admit this evidence under Rule 404(b).  *Id.* at 1143–46.

The Circuit explained that the government had proffered the earlier conviction for a proper purpose:  that defendant knowingly possessed a gun.  *Id.* at 1144.  At trial, defendant had claimed he didn't know his girlfriend's rifle was in the car, so the Circuit affirmed admission of "evidence of the prior conviction to show 'knowledge, intent, and absence of mistake or accident,' proper purposes under Rule 404(b)."  *Id.*  The Circuit also held the prior conviction relevant "because it is probative to demonstrate that [defendant] knowingly possessed the firearm."  *Id.* (quotation cleaned up).  Because defendant had denied knowledge of the gun, the government could adduce evidence that defendant "knowingly possessed a firearm at another point in time."  *Id.*  The Circuit emphasized that "the prior conviction required the same knowledge" as the charged offense, so the defendant's prior conviction made "knowledge of the

rifle in the present case 'more probable than it would be without the evidence.'" *Id.* (quotation cleaned up) (quoting Fed. R. Evid. 401). Summing up, the Circuit said, "the fact that [defendant] *knowingly* possessed a firearm in the past supports the inference that he had the same knowledge in the context of the charged offense." *Id.* (emphasis in original).

So, under *Moran*, "when a defendant places his intent at issue, the defendant's prior acts of weapon possession are relevant for the proper purpose of demonstrating the charged act of firearm possession was knowingly undertaken." *McGlothin*, 705 F.3d at 1263 (footnote omitted). But the court also must heed our Circuit's warning "that reflexive admission of prior instances of firearm possession to prove intent is not without substantial danger." *Id.* at 1263 n.13. With these standards in mind, the court considers the first three components of the Rule 404(b) test.

*First*: proper purpose. *Moran* provides that prior possession of firearms demonstrates knowledge, a proper Rule 404(b) purpose. To circumvent *Moran*, defendant asserts that he "is not presenting a defense raising his lack of knowledge that these items recovered on October 19, 2022 were firearms." Doc. 79 at 3. But that's not quite the right standard for intent. The first element of a felon in possession charge is "the defendant knowingly possessed a firearm[.]" Tenth Circuit Pattern Jury Instructions § 2.44. The "crime of felon in possession under 18 U.S.C. § 922(g)(1) is a general intent crime." *Moran*, 503 F.3d at 1144 n.6. So, "the government need not prove any particular intent, but must show only that a felon possessed a firearm knowingly." *Id.* (quotation cleaned up). And, by pleading not guilty, defendant has put every element of the crime at issue. *See United States v. Hill*, 60 F.3d 672, 676 (10th Cir. 1995) (explaining that government's proffer of 404(b) evidence was "clearly relevant" because knowledge was "an essential element of the charged offense" and defendant's not guilty plea

"put in issue every material ingredient of the crime charged, leaving the government its full burden of proving every element beyond a reasonable doubt" (quotation cleaned up)).

*Second*:  relevance.  A "defendant's prior acts of weapon possession are relevant for the proper purpose of demonstrating the charged act of firearm possession was knowingly undertaken."  *McGlothin*, 705 F.3d at 1263.  So this second element is satisfied, too.

*Last*:  Rule 403 balancing.  Even if evidence is admissible as other-act evidence under Rule 404(b), the court still may exclude it under Rule 403.  *Irving*, 665 F.3d at 1213; *United States v. Silva*, 889 F.3d 704, 712 (10th Cir. 2018).  The court must weigh the evidence's probative value against the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  And this is where the government's argument falters.

Some social-media posts are much more probative than others.  Our Circuit has recognized consistently "the probative value of uncharged acts to show motive, intent, and knowledge, whether the acts involved previous conduct or conduct subsequent to the charged offense, as long as the uncharged acts are similar to the charged crime and sufficiently close in time."  *Davis*, 636 F.3d at 1298.  And "although the uncharged crime must be similar to the charged offense, it need not be identical."  *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000).  The government may show similarity "through physical similarity of the acts or through the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses."  *Id.* (quotation cleaned up).  Because the extrinsic evidence here is a social-media post—not a prior conviction with the same mens rea element, as at issue in *Moran*—the state-of-mind similarity doesn't apply as readily.  So, the question

becomes whether the social-media posts are probative "through physical similarity of the acts." *Id.*

The court hardly can tell if the guns depicted in the social-media posts resemble the guns charged in the Indictment.  The government has provided the court merely with narrative descriptions of the social-media posts.  Doc. 76 at 3–5.  Those narrative descriptions are unhelpfully vague and a poor substitute for seeing the photos.  What's more, at the hearing, the government insinuated that it might have additional evidence.  The court hasn't seen any of this referenced evidence, either.  The court only has seen the social-media post depicted in the government's hearing exhibits.  But the government didn't connect those exhibits to the posts described in narrative form in their Rule 404(b) notice.  These shortcomings present a problem for weighing the probative value of the evidence against the other Rule 403 considerations.

The probative value of the social-media posts depends largely on how similar the guns shown in the posts are to the guns charged.  The machine-gun charge identifies a Glock .40 pistol.  Doc. 1 at 1.  The felon-in-possession charge identifies the Glock .40 pistol and two Micro Dracos.  *Id.* at 2.  And yet, according to the government's Rule 404(b) notice, only one of the 32 social-media posts depicts one of the guns charged:  a December 4, 2021, photo of defendant with a Glock .40 pistol.  Doc. 76 at 4.  But, again, the court hasn't seen this photo.  Other posts allegedly depict a pistol, though it's not clear what kind of pistol.  If the depicted pistol isn't a Glock .40, then it has less probative value.  So too for the posts of defendant with an AK-47-style pistol—if that pistol isn't a Micro Draco, then it simply isn't as probative.[4]  The

---

[4]    At the hearing, the government asserted that there's no difference between a Mini Draco and a Mirco Draco.  That's not how the court reads the publicly available gun literature.  *Compare* Century International Arms, Inc., *Owner's Manual Micro Draco Semi-Auto Pistol* 5 (2013), https://www.centuryarms.com/media/wysiwyg/MicroDracoSemi-AutoPistol_1.pdf (describing 6.25" barrel length), *with* Century International Arms, Inc., *Owner's Manual Mini Draco Semi-Auto Pistol* 5

government also describes photos of defendant with an extended magazine, an AR-15-style pistol, or a rifle. These photos have even less probative value; the government hasn't charged defendant with possessing an extended magazine, AR-15-style pistol, or a rifle. *See United States v. Moore*, 709 F.3d 287, 295–96 (4th Cir. 2013) (affirming admission of revolver under Rule 404(b) where carjacking was committed with revolver but concluding district court erred by admitting semi-automatic pistol evidence under 404(b) because semi-automatic pistol was a different type of gun); *cf. United States v. Whitlow*, 134 F.4th 914, 925 (6th Cir. 2025) ("[W]e've repeatedly upheld the introduction of photographs that appear to show the defendant with the *same* firearm as the one found at the crime scene." (emphasis added)).

On the other side of the 403 scale, social-media posts of defendant with guns are highly prejudicial. And, if the guns aren't the same guns as those charged, then the posts risk confusing and misleading the jury. In the court's view, it's also a waste of time to open the evidence to dozens of social-media posts of defendant with guns when the charges here focus on specific guns on a specific date.

There's another problem. The date a photo posted to social media doesn't mean that the photo was taken that day. At the hearing, the government conceded that it doesn't know when the photos in the posts were *taken*—only when the photos were *posted*. In the court's view, the probative value of the post's photo depends largely on whether the photo depicts defendant close in time to October 19, 2022—*i.e.*, was the photo taken near in time to that day? In short, it matters little when the photo was posted. This unknown fact—when the posted photo was taken—will continue to generate questions about the probative value of the social-media posts.

---

(2013), https://www.centuryarms.com/media/wysiwyg/MiniDracoSemi-AutoPistol.pdf (describing 7.75" barrel length). Specificity about the type of guns at issue is important to avoid confusion.

In light of the issues just identified, the court rejects the government's request to admit the government's Rule 404(b) evidence pretrial.[5]  That ruling leaves only the government's Notice of Intent to Use Certified Copies of Records (Doc. 77) and defendant's Objection (Doc. 80) to that Notice.  The court takes this final issue up, next.

### C.    Certified Copies of Records

The government has notified defendant and the court that it intends to introduce Facebook and Instagram posts as business records and to utilize a custodian-of-record affidavit to admit the posts.  Doc. 77 at 1–2.  The government invokes Fed. R. Evid. 902(11), which provides that certified, domestic records of a regularly conducted activity are self-authenticating. Defendant has objected.

To begin, the court now recognizes that it misapprehended the government's argument during the January 15 hearing.  The court was concerned about the government's use of a hearsay exception for a photograph.  But now, after additional review of the government's filing, the court understands the government's argument.  It invokes Rule 902(11)'s authentication

---

[5]      The government's analysis only references social-media posts.  Doc. 76 at 13.  But, elsewhere, the government mentions a video of defendant at a firing range.  *Id.* at 5.  It's not clear if the government is trying to admit that video under Rule 404(b).  In any event, the firing range video comes from defendant's friend and, according to the government, depicts "Defendant and others firing firearms, including machineguns, at a firearms' range . . . on September 7, 2022."  *Id.* at 5.  It's not clear if the machineguns depicted in the video are the type charged here—a Glock .40 with a Glock switch.  The court thus declines to admit this video pretrial under Rule 404(b).

The government also mentions that it has evidence of defendant's social-media conversations about machine-gun-conversion devices.  *Id.* at 5–6.  It's unclear whether the government seeks to admit this evidence under Rule 404(b).  If that is what the government requests, then the court denies it at this pretrial stage.  As described by the government, the conversations show the defendant buying a machine-gun-conversion device—but the government doesn't say that the device is a Glock switch.  *Id.* at 5.  And the other conversations concern Glock switches, but they don't lead to the defendant actually purchasing the Glock switch.  *Id.* at 6.  The court hasn't seen these social-media conversations in their entirety, so it declines to admit them pretrial.  At present, the court suspects that these conversations have little probative value, and they function as carriers of a substantial risk of unfair prejudice, confusion, and mini trials.

technique which, in turn, borrows three of Rule 806's requirements. Those borrowed requirements decide whether an exhibit qualifies for Rule 902(11)'s authenticating methodology. Though the court now understands better the government's argument, it nonetheless sustains defendant's objection.

In this context, the government, to utilize Rule 902(11), must show that the records qualify as business records under Fed. R. Evid. 803(6)(A)–(C). As relevant here, Rule 803(6) provides that a record qualifies as a business record if:

(A) "the record was made at or near the time by—or from information transmitted by— someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, . . . ; [and]

(C) making the record was a regular practice of that activity[.]"

If a record meets these three criteria, then the record authenticates itself.

Whether the social-media posts are self-authenticating records "depends on what the proponent of the evidence claims the evidence to be." 31 *Wright & Miller's Federal Practice & Procedure* § 7145 (2d ed. 2025). If the government "only claims that the material is, in fact, material maintained on such a website, then Rule 902(11) should be applicable." *Id.* "But the material is not self-authenticating if it is offered for some other purpose." *Id.* So, if the government offers the social-media post "to prove the accuracy of [its] content, such as the depiction or description of illegal activity," then the post does not authenticate itself. *Id.*

Here, the social-media posts aren't self-authenticating business records because the government proffers them to prove what the posts depict—*i.e.*, a photo of defendant holding a gun to show that he possessed a gun. This use fails Rule 803(6)(C), which requires that "making the record was a regular practice of that activity[.]" While a "social media website might

16

*maintain* postings in the regular course of business, there nothing about the *creation* of such postings that has the regularity required of business records." 31 *Wright & Miller's Federal Practice & Procedure* § 7145 (emphases in original). So, "a certification from a social media platform alone is insufficient to establish authenticity." *United States v. Perez*, 61 F.4th 623, 626 (8th Cir. 2023). The Sixth Circuit has reached the same conclusion in a case much like this one. *United States v. Farrad*, 895 F.3d 859, 864, 879–80 (6th Cir. 2018) (concluding district court erred in admitting Facebook photos of defendant holding gun as self-authenticating business records under Rule 902(11)).

Instead of relying on Rule 902(11) to authenticate the social-media posts, the government "may authenticate social media evidence with circumstantial evidence that adequately links a particular person to the social media account." *Perez*, 61 F.4th at 626; *see also* Fed. R. Evid. 901. The court thus sustains defendant's Objection (Doc. 80) to the government's Notice of Intent (Doc. 77).

## III.        Conclusion

The court denies the part of the government's Rule 404(b) filing (Doc. 78) that moves the court to admit certain evidence pretrial. And it sustains defendant's Objection (Doc. 80) to the government's Notice of Intent (Doc. 77).

**IT IS THEREFORE ORDERED BY THE COURT THAT** the government's Motion in Limine (Doc. 78) is denied.

**IT IS FURTHER ORDERED THAT** defendant's Objection (Doc. 80) is sustained.

**IT IS SO ORDERED.**

**Dated this 28th day of January, 2026, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**

17